## HASSE v. FREUD.

1. DECEIT—PLEADING AND PROOF—VARIANCE.

A declaration for deceit alleged that defendants, by false representations, induced plaintiff to purchase worthless shares of stock. Defendants' ownership of the stock was not alleged. *Held*, that it was no variance that the proof showed a purchase · from a third person, for whom payments were made to defendants.

2. SAME—FALSE REPRESENTATIONS—TITLE TO LAND.

The falsity of a representation that a mining company had title to certain lands by warranty deed is established by evidence that the company had but an undivided interest in the mining rights.

Error to Wayne; Adams, J., presiding. Submitted October 20, 1898. Decided February 6, 1899.

Case by Julius Hasse against Julius Freud, Daniel B. Newkirk, and Sigmund Aronheim for deceit. From a judgment against defendants Freud and Newkirk, they bring error. Affirmed.

*Bowen, Douglas & Whiting*, for appellants.

*Flowers, May & Moloney*, for appellee.

MONTGOMERY, J. This is an action on the case for deceit. The defendants, with one Crill and others, had formed a corporation known as the Blue Gulch Gold-Mining Company. The declaration avers that defendants induced plaintiff to purchase 60 shares of the stock, by representing that the company owned mines rich in gold ore, and exhibiting to plaintiff specimens of gold claimed to have been taken from the lands, and telling plaintiff that they had seen a rich vein of gold, which they had uncovered, and recovered, for fear it would be discovered by the natives and others, and that it was the intention to operate the mines, and that the mines would bring ample

returns to plaintiff and to them, and by making other representations of a glowing character. The declaration avers that plaintiff relied on these representations, and that they were false. On the trial a verdict and judgment passed against the defendants Freud and Newkirk, and they have brought error.

It is contended on behalf of defendant Freud that he did not make the representations alleged in the declaration, and that he made no representations whatever as to the value of the property; that he was as ignorant of its value as plaintiff was; and that this fact was known to plaintiff when he purchased his shares. It is not quite accurate to say that plaintiff knew that Freud was ignorant of the facts which he assumed to state. Plaintiff testified:

"I don't think anybody told me Freud had been there, but I understood the way he talked and everything— I kind of thought he had been down there. He was positive, and swore to everything Newkirk said."

While it may be said that this testimony does not tend strongly to show that plaintiff supposed Freud was speaking of his personal knowledge as to the character of the mines, it further appears that he stated that the company had title to the lands by warranty deed, and there can be no doubt that as to this fact, at least, he assumed to speak as one knowing the facts.

It is claimed that there is a variance between the declaration and proof, in that the declaration avers that plaintiff "was induced by the defendants to purchase certain stock of said company, to wit, 60 shares, for which he paid the defendants the sum of $600," whereas the proofs show a purchase from Crill. It will be noticed that the declaration does not state of whom the stock was purchased, and the testimony tends to show that the payments were made to defendants, or some of them. It is true, the money was received for Crill, but the transaction was sufficiently identified, there being no averment as to the ownership of the stock. There was no variance. These parties were sued as tort feasors, and the gist of the

action was the false representations, for which they were responsible, regardless of whether the purchase was made from them or another.

The defendants asked an instruction to the effect that the mining company had full and exclusive title to the property for the purpose of mining. Defendants' own testimony shows that, at the time of plaintiff's purchase, the company had but a two-thirds interest in the mining rights.

Some assignments are directed to the charge of the court, and the refusal to charge as requested. We think the charge as given a very fair and careful statement of the law of the case, and that it sufficiently guarded the defendants' rights. The instruction was in part as follows:

"The court also charges the jury that to constitute fraud within the meaning of the law, under the pleadings in this case, it must appear by a fair preponderance of the evidence that the defendants did commit a fraud upon the plaintiff in manner and form as charged in the declaration; otherwise, the plaintiff cannot recover, and the jury should find for the defendants. The plaintiff is not entitled to recover unless you find from the evidence in this case, by the fair preponderance of evidence, that the defendants made the representations alleged in the declaration; that such representations were false; that the plaintiff believed and relied upon such representations, and was induced thereby to make the purchase of stock in question, and did make such purchase, and has sustained damage by means thereof. * * * I further charge you, if you find from the evidence that the defendants did not make the false representations charged in the declaration, and did not make any false representations of the facts then existing, and only expressed their opinions as to the future outcome and success of the property when it came to be worked, then the plaintiff would not have a right of action, although you may be satisfied that he confided in such opinions when he purchased the stock in question, and your verdict would be in favor of the defendants."

We discover no prejudicial error. Judgment affirmed.

The other Justices concurred.